Anthony FRENZA, et al., Plaintiffs,

v.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, et al., Defendants.

Civ. A. No. 82–70798.

United States District Court, E.D. Michigan, S.D.

Feb. 22, 1983.

Robert J. Dinges, Detroit, Mich., for plaintiffs.

David Y. Klein, Livonia, Mich., for defendant Union Local 80.

Anthony A. Asher and Dennis L. Gabrian, Southfield, Mich., for defendant SMACNA.

## OPINION

RALPH B. GUY, Jr., District Judge.

Plaintiffs, thirteen members of Local 80, instituted this action against the trustee of Local 80, various members and former members of the Local 80 bargaining committee, Local 80, the Sheet Metal Workers' International Association (International),[1] and the Sheet Metal Associated Contractors of North America (SMACNA). The underlying facts, as alleged in plaintiffs' complaint, may be summarized as follows.

Over the years, Local 80 and SMACNA have executed various collective bargaining agreements covering the terms and conditions of employment for sheet metal workers in the metropolitan Detroit area. Upon the expiration of the last such agreement, Local 80, on June 1, 1981, commenced an economic strike. Because of the Local's inability to enter into a new agreement, the International, on August 21, 1981, placed Local 80 in trusteeship. The following day, the trustee removed two members from the bargaining committee and replaced those individuals with himself and another. Approximately six weeks later, a tentative collective bargaining agreement was reached between the reconstituted bargaining committee and SMACNA. As a result, the members of Local 80 were ordered back to work on the following day. Two weeks later, the tentative agreement was ratified by the Local 80 membership and a new collective bargaining agreement came into effect.

On or about January 29, 1982, printed copies of the new agreement were made available to members of Local 80. A review of those copies revealed certain dis-

---

1. Hereafter, the trustee of Local 80, the members of the Local 80 bargaining committee, Local 80, and the International will be referred to jointly as the union defendants.

crepancies between the printed version of the agreement and the ratified version of the agreement. In particular, discrepancies were noted in the method of selecting individuals to serve as trustees of several employee benefit trust funds, the method of distributing funds among these same employee benefit trust funds, the bumping rights of job stewards, the obligation of members to perform shift work, and the rate of pay for shift work performed. Further investigation revealed that the discrepancies were the result of modifications that were agreed upon by SMACNA and the bargaining committee after the ratification vote. Because these changes were made without membership approval, plaintiffs brought the present suit.

In Count I of their First Amended Complaint, plaintiffs allege that the union defendants breached their duty of fair representation by bargaining after the ratification vote, agreeing to changes after the ratification vote, failing to submit the changes for ratification, failing to inform the members of the changes, conspiring with SMACNA to change the agreement, and conspiring with SMACNA to bypass a ratification vote. In addition, plaintiffs allege that SMACNA violated the 1981 Collective Bargaining Agreement by attempting to modify that agreement through negotiations with the bargaining committee with knowledge that the bargaining committee did not have authority to alter the agreement without a ratification vote. All the defendants have moved to dismiss Count I because § 301 does not provide a right of action for union members who have been denied the right to ratify a collective bargaining agreement as guaranteed by an International's constitution. Moreover, the union defendants note that plaintiffs have failed to exhaust intra-union remedies. Finally, the individual defendants contend that § 301 does not provide a right of action against individual union members.

In Count II of their First Amended Complaint, plaintiffs allege that defendants deprived them of the equal right to vote, in violation of § 101(a)(1) of the Labor-Management Reporting and Disclosure Act. 29 U.S.C. § 411(a)(1). The union defendants have moved to dismiss Count II because plaintiffs were treated in the same manner as all other Local 80 members. SMACNA has moved to dismiss Count II because § 101(a)(1) does not create a right of action against an employer.

In Count III of their First Amended Complaint, plaintiffs allege that the union defendants breached their duty of fair representation as derived from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). In addition, plaintiffs allege that SMACNA aided and abetted the union defendants' breach of their duty of fair representation, as well as the union defendants' deprivation of the members' equal right to vote on all referendums. The union defendants have moved to dismiss Count III because plaintiffs' allegations are insufficient to support a claim that defendants violated a duty of fair representation. SMACNA has moved to dismiss Count III because its only alleged wrongdoing, i.e., entering into an agreement with the bargaining committee, is not actionable.

In Count IV of their First Amended Complaint, plaintiffs allege that the union defendants violated 29 U.S.C. § 463(a)(2) by transferring Local 80 assets to the International without the permission of the Local 80 membership. In response, the International contends that no Local 80 assets were transferred to the International. Instead, the International contends that certain trust fund contributions, which formerly were paid to a local trust fund, are presently being paid directly to a national trust fund as required by the new collective bargaining agreement. SMACNA has moved to dismiss Count IV because § 463(a)(2) does not create a right of action against an employer.

With this background, the court will now consider the arguments of each of the parties. To facilitate its discussion of those arguments, the court will discuss them in terms of the various federal rights of action relied on by plaintiffs.

*29 U.S.C. § 185*

*Exhaustion*

█ In *Clayton v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), the Supreme Court held that exhaustion of intra-union remedies should not be required where the relevant internal appeals procedure cannot result in an award of the complete relief sought in plaintiff's § 301 suit. Although the union defendants have convincingly argued that the relevant internal union appeals procedures would provide plaintiffs with a fair hearing on their claims, they have not established that the procedures would be adequate to award plaintiffs the full relief they seek in this action. Specifically, the court finds that a successful internal union appeal would not result in an enforceable declaration that the modifications of the 1981 collective bargaining agreement are null and void, as SMACNA is not bound by the results of the appeal. *See, Parker v. Local 413,* 501 F.Supp. 440 (S.D.Ohio 1980). Because such a declaration lies at the heart of plaintiffs' request for relief, the court holds that plaintiffs' § 301 claims should not be dismissed due to plaintiffs' failure to exhaust intra-union remedies.

*Individual Union Members*

█ As recently reiterated by the Supreme Court in *Complete Auto Transit Inc. v. Reis,* 451 U.S. 401 (1981), § 301 does not sanction damage actions against individual employees for violating a labor agreement whether or not the union authorizes the breach. *See, Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Thus, plaintiffs' § 301 claims against the trustee and members of the bargaining committee must be dismissed to the extent that they seek damages from those individuals. Nevertheless, *Atkinson* and its progeny do not bar suit against individual employees where only equitable relief is sought. *Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkesbarre, Local 120,* 647 F.2d 372 (3rd Cir.1981), *cert.*

*denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). Given that plaintiffs seek both damages and equitable relief in this action, the court holds that the plaintiffs' § 301 claims against the individual defendants should not be dismissed, except to the extent that the claims seek damages from those individuals.

*Failure to State a Claim*

In *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the Supreme Court held that § 301 provides a right of action to an individual union member who wishes to sue his employer for breach of a collective bargaining agreement. In reaching that conclusion, the court rejected the employer's argument that § 301 provides jurisdiction only over disputes between an employer and union. In short, the court held that jurisdiction under § 301 is to be determined by reference to the type of contract that is in dispute rather than by reference to the participants in the action.

█ Nineteen years later, the Supreme Court held that § 301 provides a right of action to a local which desires to sue its international for breach of the union constitution. In reaching that conclusion, the Court stated that a union constitution was a labor agreement for purposes of § 301. *See, Plumbers & Pipefitters v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981). Despite that conclusion, the Court declined to rule on the ability of an individual union member to sue his local or international for breach of the union constitution. *Id.* at 627 n. 16, 101 S.Ct. at 2553 n. 16. Although the Court cited *Smith* for the proposition that § 301 jurisdiction is to be determined by reference to the nature of the underlying agreement, the Court refused to rule on the question of whether an individual union member could pursue a § 301 claim for breach of a union constitution. Compare *Abrams v. Carrier Corporation,* 434 F.2d 1234 (2nd Cir.1970), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971) (finding jurisdiction), with *Alexander v. International Union of*

*Operating Engineers, AFL–CIO,* 624 F.2d 1235 (5th Cir.1980) (finding no jurisdiction); *Stelling v. IBEW,* 587 F.2d 1379 (9th Cir. 1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 3115 (1979) (finding no jurisdiction); *Trail v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 542 F.2d 961 (6th Cir.1976) (finding no jurisdiction). Because the Supreme Court refused to overrule the decision of the Sixth Circuit in *Trail,* wherein the court of appeals held that individual union members could not maintain an action for breach of a union constitution, this court continues to be bound by that decision. *See, Trail v. International Brotherhood of Teamsters, supra.* As a result, the court holds that plaintiffs' § 301 claims that are based on an alleged breach of the union constitution must be dismissed.

In an attempt to avoid the rule established in *Trail,* plaintiffs contend that the present action is analogous to that presented to the court in *Parker v. Local 413,* 501 F.Supp. 440 (S.D.Ohio 1980), *aff'd.,* 657 F.2d 269 (6th Cir.1981). In *Parker,* individual employees brought suit against their employer and union contending that a flexible work week had been instituted as a result of various irregularities that occurred during a ratification vote. Thereafter, defendants moved to dismiss on the ground that the court did not have jurisdiction under § 301. Although Judge Kinneary discussed the *Trail* decision, he nevertheless found that the court had jurisdiction over the dispute. He reached that conclusion because the defendants' obligation to submit the change to a flexible work week for ratification arose not from the union constitution but from the collective bargaining agreement. Since plaintiffs in the present case rely solely on the union constitution, the court finds the *Parker* decision to be distinguishable. As a result, the court holds that plaintiffs' claims under § 301 must be dismissed for failure to state a claim upon which relief may be granted.

### 29 U.S.C. § 101(a)(1)

In *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed. 190 (1964), the Supreme Court held that plaintiffs had not stated a claim for deprivation of the equal right to vote guaranteed by § 101(a)(1) simply by alleging that the qualifications necessary to become officers of the relevant union precluded them from becoming officers. Although the Court noted that the requisite qualifications were unattainable by most union members, the Court concluded that § 101(a)(1) did not provide jurisdiction over the dispute as plaintiffs had not been denied the *equal* right to vote. In short, the Court stated that § 101(a)(1) does not provide courts with jurisdiction to review the fairness of elections.

Despite this broad statement, subsequent decisions by the lower courts have recognized jurisdiction over disputes involving procedural irregularities that have effectively denied union members their equal right to vote. *Bunz v. Moving Pictures Machine Operators Protective Union Local 224,* 567 F.2d 1117 (D.C.Cir.1977). For example, courts have recognized that the equal right to vote may be denied where a union circulates misleading information, a union refuses to provide opponents with a membership list, a union provides ballots in an irregular form, a union fails to count all the ballots, and a union refuses to implement decisions reached via a properly conducted vote. *Id.* *See, Blanchard v. Johnson,* 532 F.2d 1074 (6th Cir.), *cert. denied,* 429 U.S. 834, 869, 97 S.Ct. 100, 180, 50 L.Ed.2d 100 (1976). In addition, courts have found jurisdiction over disputes involving disparate treatment of members of affiliated locals even though all members of a given local have been treated equally. *Trail v. International Brotherhood of Teamsters, supra.*

Applying these principles to the present case, the court initially notes that plaintiffs have not alleged any procedural irregularities that would have denied them their equal right to vote. Instead, plaintiffs allege that no vote was taken. Nevertheless, plaintiffs contend, and defendants concede, that the International Association

Constitution, Article XXI, § 10, grants railroad sheet metal workers the right to ratify. Given that no factual record exists from which the court can decide whether a reasonable explanation exists for giving railroad workers ratification rights while denying these same rights to non-railroad workers, the court concludes that dismissal would be inappropriate. *See, American Postal Workers, AFL–CIO Headquarters Local 6885 v. Parker,* 665 F.2d 1096 (D.C. Cir.1981); *Trail v. International Brotherhood of Teamsters, supra.* Because of this disparate treatment of railroad and non-railroad workers, the court also concludes that this case is distinguishable from the line of cases that have held that an across-the-board denial of a ratification vote is not actionable under § 101(a)(1). *See, e.g., Alexander v. International Union of Operating Engineers, AFL–CIO,* 624 F.2d 1235 (5th Cir.1980); *Stelling v. IBEW, supra.* Finally, the fact that a ratification vote occurred following the establishment of a trusteeship creates a genuine issue of material fact regarding defendants' contention that any right of ratification was suspended during the trusteeship. *Cf. Branch v. Vickers,* 209 F.Supp. 518 (E.D.Mich.1962) (holding that § 101(a)(1) was not violated where employees were denied right of ratification during period of trusteeship).

■ Despite the court's conclusion that the union defendants' motion to dismiss should be denied, the court holds that SMACNA's motion to dismiss should be granted. As plaintiffs concede, § 101(a)(1) creates no right of action against employers. *Abrams v. Carrier Corp., supra; Parker v. Local 401, supra; Werk v. Armco Steel Corp.,* 92 L.R.R.M. 3393 (S.D.Ohio 1976).[2]

### *29 U.S.C. § 159(a)*

■ As noted above, federal courts do not have jurisdiction under § 301 over an action alleging a union's breach of its duty of fair representation where there is no allegation that there was a breach of a labor contract. Even where there is no alleged breach of a labor contract, however, federal jurisdiction may be asserted in duty of fair representation cases under 28 U.S.C. § 1337. *See, e.g., In re Carter,* 618 F.2d 1093 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *Retana v. Apartment, Motel, Hotel and Electrical Operators Union, Local 14, AFL–CIO,* 453 F.2d 1018 (9th Cir.1972). Thus, the court has jurisdiction to consider plaintiffs' allegation that the Union Defendants have breached their duty of fair representation despite its prior ruling that a violation of a union's constitution does not involve a dispute arising from breach of a labor contract. *Id.* In short, the court must determine whether plaintiffs' allegations that they were denied the opportunity to ratify the modifications to the 1981 collective bargaining agreement are sufficient to state a claim for breach of the duty of fair representation.

■ At the outset, the court finds that genuine issues of material fact exist relative to the existence of a right of ratification under the union constitution. Although plaintiffs have been unable to specify a provision of the constitution that grants that right, defendants do not contest plaintiffs' allegation that ratification votes have taken place before the execution of each collective bargaining agreement which has been entered into between Local 80 and SMACNA. Moreover, defendants do not challenge plaintiffs' allegation that a ratification vote occurred following the tentative adoption of the 1981 collective bargaining agreement. Under these circumstances, the court concludes that the question of whether plaintiffs were entitled to ratify the

---

**2.** Although no mention of the disparate treatment of railroad and non-railroad workers is contained in plaintiffs' complaint, all parties have maintained their positions relative to this issue as if such allegations had been made. In light of this action by the parties, the court concludes that plaintiffs should amend their complaint to reflect the addition of this new issue. Fed.R.Civ.P. 15(b). Accordingly, plaintiffs will be allowed to amend their amended complaint to add allegations of the disparate treatment of railroad and non-railroad workers.

modifications to the 1981 collective bargaining agreement is not ripe for dismissal.

Assuming that plaintiffs were entitled to ratify the modifications, the court further concludes that genuine issues of material fact exist relative to the propriety of the union defendants' conduct in denying plaintiffs their right to ratification. Because of the union defendants' position as the plaintiffs' exclusive bargaining representative, defendants owed plaintiffs an obligation "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Although the union defendants are allowed a wide range of discretion in representing members, particularly in the give and take process of negotiation, *see, American Postal Workers Union, AFL–CIO Headquarters Local 6885 v. Parker, supra,* no factual record exists from which the court can decide whether the union defendants acted discriminatorily, arbitrarily, or in bad faith in failing to seek ratification of the modifications to the 1981 agreement. *See, Farmer v. ARA Services Inc.,* 660 F.2d 1096 (6th Cir.1981); *Trail v. International Brotherhood of Teamsters, supra; Alexander v. International Union of Operating Engineers, AFL–CIO, supra.*[3]

■ Despite the court's conclusion that the record does not support dismissal of plaintiffs' claims of breach of the duty of fair representation, the court does believe that dismissal is appropriate relative to plaintiffs' claims that SMACNA aided and abetted the union defendants' breach of their statutory duties. Where an employer bargains in good faith with the duly recognized exclusive bargaining representative, the employer cannot be liable under any theory unless the employer violates the executed collective bargaining agreement. *See, American Postal Workers Union, AFL–CIO, Headquarters Local 6885 v. Parker, supra.* A review of the amended complaint indicates that the primary allegation of bad faith on the part of SMACNA is that they agreed to modify the 1981 collective bargaining agreement with knowledge that those modifications would not be effective unless ratified by the rank and file. Given that plaintiffs have not alleged that SMACNA had an affirmative duty to independently determine whether a ratification vote was conducted or that SMACNA acted to deprive plaintiffs of a ratification vote, *cf. Parker v. Local 413, supra,* (holding that employer violated labor agreement where employer's manager interfered with employees' ratification vote), the court concludes that SMACNA acted in good faith in agreeing to modify the 1981 collective bargaining agreement. *See, Battle v. Clark Equipment Co.,* 579 F.2d 1338 (7th Cir.1978).

■ In addition, the court rejects plaintiffs' further contention that SMACNA violated the 1981 agreement by acting under the modifications prior to ratification. Specifically, the court finds that this argument simply reiterates plaintiffs' argument that SMACNA should be liable for the alleged breach of the union constitution pursuant to 29 U.S.C. § 185. Regardless of whether plaintiffs' complaint is interpreted to mean that no agreement was formed until all parts of the agreement were ratified or that the modifications would only become effective if they were ratified, the essence of plaintiffs' complaint is an alleged violation of the union constitution and not that SMACNA violated the applicable agreement by requiring the plaintiffs to work under the 1981 changes. In this regard, the court would note that plaintiffs' prayer for

---

**3.** In reaching this conclusion, the court has not distinguished between the potential liability of the various union defendants. As noted above, the duty of fair representation arises from one's position as an exclusive bargaining representative. Thus, the liability of the various union defendants will turn on their acting as the exclusive bargaining representatives of plaintiffs. *See, e.g., Sinyard v. Foote & Davies Division of*

*McCall Corp.,* 577 F.2d 943 (5th Cir.1978); *Kuhn v. National Association of Letter Carriers, Branch 5,* 528 F.2d 767 (8th Cir.1976). Because defendants did not raise this argument at this time, the court has treated various union defendants as being similarly situated. Nevertheless, the court has not ruled on the question of whether all or any of the union defendants owed plaintiffs a duty of fair representation.

relief seeks no damages for the alleged breach of the 1981 agreement but only a declaration that the changes in the 1981 agreement were improperly and illegally agreed upon and thus null and void. Accordingly, the court concludes that SMACNA may not be held liable for the union defendants' failure to seek ratification of the 1981 modifications in light of SMACNA's good faith bargaining with the Local 80 bargaining committee.

### 29 U.S.C. § 463(a)(2)

When a subordinate member of a labor organization is in trusteeship, it is unlawful to transfer to the labor organization any current receipts or other funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship. In their complaint plaintiffs allege that the union defendants, during the period of the trusteeship, violated that rule by transferring sums that should have been retained in a local pension fund to a national pension fund. In response, the union defendants contend that the national pension fund is an independent organization that is not under the control of the International. Given the state of the record, the court concludes that these contentions raise genuine issues of material fact relative to the union defendants' alleged violation of § 463(a)(2). Nevertheless, the court finds that plaintiffs' § 463(a)(2) claims against SMACNA should be dismissed. As plaintiffs concede, § 463(a)(2) creates no right of action against employers. *See, Cox v. Hutcheson,* 204 F.Supp. 442 (S.D.Ind.1962).

ORDER GRANTING SMACNA'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART THE UNION DEFENDANTS' MOTIONS TO DISMISS

This matter is before the court on the above-captioned motions. The court has reviewed the motions and briefs filed in support thereof and in opposition thereto, and, in accordance with the attached Opinion;

IT IS ORDERED that SMACNA's Motion To Dismiss is hereby GRANTED.

IT IS FURTHER ORDERED that the Union Defendants' Motions to Dismiss, relative to Plaintiffs' claim under 29 U.S.C. § 185 are hereby GRANTED.

IT IS FURTHER ORDERED that the Union Defendants' Motions to Dismiss, relative to the disparate treatment of railroad and nonrailroad employees under 29 U.S.C. § 411(a)(1), are hereby DENIED.

IT IS FURTHER ORDERED that the Union Defendants' Motions to Dismiss relative to the remainder of Plaintiffs' claims under 29 U.S.C. § 411(a)(1) are hereby GRANTED.

IT IS FURTHER ORDERED that the Union Defendants' Motions to Dismiss, relative to Plaintiffs' claims under 29 U.S.C. §§ 159(a) and 463(a)(2), are hereby DENIED.